NOLAN EDWARD KLEIN, Appellant, *v.* THE STATE
OF NEVADA, Respondent.

No. 20078

December 28, 1989 784 P.2d 970

*David Parraguirre,* Public Defender and *Karen Grifall,* Deputy
Public Defender, Washoe County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,*
District Attorney and *Larry Guy Sage,* Deputy District Attorney,
Washoe County, for Respondent.

# OPINION

*Per Curiam:*

Nolan Edward Klein appeals his conviction, upon a jury verdict, of two counts of robbery with the use of a deadly weapon, one count of burglary, and one count of sexual assault with the use of a deadly weapon. *See* NRS 193.165; NRS 200.366; NRS 200.380; NRS 205.060. For the reasons set forth below, we affirm Klein's conviction in all respects.

## FACTS

On May 9, 1988, shortly after the 9:00 p.m. closing time of the Payless Shoe Store in Sparks, Nevada, a man accosted the 21-year old manager as she was cleaning the outside windows. Holding a knife to her stomach, he directed her back into the store where another employee was counting out the daily receipts from the register. The second employee reached for the telephone to summon help, but the man instructed her to put it down. Waiving the knife, he demanded and received a bag containing $198. He then forced the two women to enter a bathroom at the rear of the store. After locking themselves in, the women attempted to summon the police by activating a portable alarm.

The alarm apparently failed to function, however, and a short time later, the man returned and ordered the manager out of the bathroom. Frightened, she complied. Announcing that he had to do something that would put him away for a long time, he sexually assaulted her while holding a knife to her throat. The assailant then returned his victim to the bathroom and, expressing remorse for his actions, promised to call the police to report his crimes. A short time later, the Sparks Police Department received and tape recorded a telephone call from an individual who reported that he had just robbed the store and left two women locked in the bathroom. Several weeks after the crimes occurred, the store manager identified appellant as the perpetrator from a police photograph. Appellant was subsequently arrested and brought to trial.

At trial, the two women both positively identified appellant as the robber and assailant. Additionally, the state presented the testimony of appellant's former girlfriend who stated that she was familiar with appellant's telephone voice and, after having heard the police tape recording of the telephone call reporting the robbery, she had "no doubt" that appellant had placed that call.

Although appellant elected not to testify at his trial, his counsel presented numerous witnesses in an effort to establish that appellant had an alibi on the night of the crime. Through the testimony

of appellant's mother and sister, as well as others acquainted with appellant and his mother, the defense attempted to show that on the night of May 9, 1989, appellant was in Jack's Bar in Carson City. Four of appellant's alibi witnesses testified that they specifically recalled being with appellant in the bar on the night in question. They explained that they remembered appellant's presence on that particular evening because the group at the bar had joked about a prophecy of Nostradamus, reportedly foretelling the occurrence of a great disaster on the following day.

The jury, however, apparently found the prosecution's witnesses more credible than the witnesses for the defense. It returned verdicts of guilty on all counts. The district court sentenced appellant to serve consecutive terms totalling thirty years in the Nevada State Prison for the robberies with the use of deadly weapon, along with a concurrent five-year term for the burglary. In addition, the district court imposed two consecutive life terms with the possibility of parole for the sexual assault with the use of a deadly weapon. This appeal followed.

## DISCUSSION

Appellant first contends that prosecutorial misconduct fatally infected the proceedings below. While conceding that defense counsel tendered no contemporaneous objections to any of the challenged remarks of the prosecutor, appellant argues that our reversal of his conviction is warranted because the prosecutor committed "patently prejudicial and inflammatory misconduct" during his closing argument to the jury. *See, e.g.,* Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986) (general rule that prosecutorial misconduct will not be reviewed on appeal in absence of a contemporaneous objection did not preclude supreme court's consideration of alleged error where highly prejudicial and inflammatory remarks required *sua sponte* intervention of court). Specifically, appellant argues, the prosecutor improperly prejudiced appellant's defense and inflamed the jury by personally vouching for the credibility of the state's witnesses and by accusing the defense witnesses of having motives to lie.[1] In our view, however, the prosecutor's closing comments to the jury can hardly compare to the remarks we condemned in *Sipsas*. No *sua sponte* intervention of the court was therefore required. *Cf. Sip-*

---

[1]The specific prosecutorial remarks at issue in this appeal include the prosecutor's statements that the victims had "no motive to come in here and lie," that it made "no difference to [the victims] whether or not [appellant was] convicted except as a victim of crime" and that the victims only sought "justice." Appellant also complains that the prosecutor improperly told the jury that appellant's former girlfriend "was candid with you." Additionally,

*sas,* 102 Nev. at 125, 716 P.2d at 234-35. Consequently, by neglecting to tender any contemporaneous objections below, appellant failed to preserve the issue for our review. *See* Hooper v. State, 95 Nev. 924, 604 P.2d 115 (1979); Kelso v. State, 95 Nev. 37, 588 P.2d 1035 (1979), *cert. denied,* 442 U.S. 921 (1979). Nonetheless, in light of the frequency with which this issue has recently arisen in this court, we take this opportunity to examine the permissible boundaries of allowable argument where, as here, the credibility of the witnesses is of primary significance to the jury's ultimate determination of guilt or innocence.

Appellant argues that the prosecutor's closing remarks violated the Supreme Court Rules and the holdings of numerous recent decisions of this court. *See* SCR 173(5) (a lawyer shall not express "a personal opinion as to the justness of a cause, the credibility of a witness, . . . or the guilt or innocence of an accused"); Witherow v. State, 104 Nev. 721, 765 P.2d 1153 (1988) (prosecutor improperly and specifically stated his personal opinion that a witness had lied on the stand); Flanagan v. State, 104 Nev. 105, 754 P.2d 836 (1988) (prosecutor improperly interjected his personal beliefs and invoked the authority of his office by telling the jury that he did not take his responsibility to decide whether or not to seek the death penalty lightly and that the death penalty was the only penalty *he* would even suggest the jury consider); Aesoph v. State, 102 Nev. 316, 721 P.2d 379 (1986) (prosecutor improperly, repeatedly and specifically stated his personal opinion and beliefs respecting factual issues and the credibility of witnesses). In the instant case, however, the comments at issue are clearly distinguishable from those condemned in the above cited cases.

Like the situation in *Witherow,* the jury's determination of guilt at appellant's trial was necessarily and primarily dependent upon its assessment of the credibility of the respective witnesses. Simply put, in resolving the question of appellant's guilt or innocence, the jury was squarely confronted with the factual question of who was more believable, the state's witnesses or appellant's alibi witnesses. Statements by either counsel conveying a personal opinion "as to the veracity of witnesses in circum-

---

appellant maintains that, in characterizing the testimony of appellant's mother and sister, the prosecutor improperly stated:

> It's wrong to get on the stand and not tell the truth and the whole truth. It's for you to determine whether or not they were. It's understandable if they didn't. But they're the ones that have got something to gain by this, not the two victims that testified, not [appellant's former girlfriend.]

stances where veracity may determine the ultimate issue of guilt or innocence'' clearly constitutes improper argument.[2] *See* Harris v. United States, 402 F.2d 656, 657 (D.C. Cir. 1968). Unlike the censured statements in *Harris* and *Witherow,* however, the prosecutor's comments in issue here did not ''divert the focus of the jury's consideration of the case from the facts in evidence to the attorney's personal evaluations of the weight of the evidence.'' *Harris,* 402 F.2d at 659; *Witherow,* 104 Nev. at 724, 765 P.2d at 1155.

To the contrary, the prosecutor began his closing argument by reminding the jury of the court's instruction that nothing counsel might say during the trial was to be considered as evidence in the case. Moreover, rather than stating a personal opinion respecting the veracity of the respective witnesses, the prosecutor merely proceeded to *argue* to the jury that the facts in evidence established that the victims had no motive to lie, that another witness was ''candid'' in her testimony, and that appellant's mother and sister had something ''to gain'' from their testimony, while the victims and appellant's former girlfriend did not. It was entirely permissible for the prosecutor to argue the evidence before the jury in such a fashion and to suggest reasonable inferences that might be drawn from that evidence. *See generally* Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987). *See also Harris,* 402 F.2d at 659 (the prosecutor is free to strike hard blows at witnesses whose credibility he is challenging)[3]; Collins v. State, 87 Nev. 436, 488 P.2d 544 (1971) (statements made by the prosecutor, *in argument,* when made as a deduction or conclusion from evidence introduced in the trial, are permissible). The prosecutor's comments in this instance did not divert the jury's attention from its proper focus on the facts in evidence reflecting on the issue of credibility of the witnesses. Therefore, we conclude that the challenged remarks were well within the boundaries of acceptable argument and comment.

Appellant also contends that insufficient evidence was pre-

[2]We note, for example, that during defense counsel's closing argument in the instant case, the district court quite properly sustained the prosecutor's objection to a statement by defense counsel conveying her personal beliefs. The district court immediately instructed the jury ''not to pay any attention to the personal opinions of counsel.''

[3]As the court also noted in *Harris,* the ''universally accepted and proper form of comment on the contradictions in testimony'' entails argument focusing the jury's attention on the fact that if it believes one witness, it must also disbelieve the contradictory testimony of the other witness. *Id.* at 658, n.3.

sented to the jury to support appellant's conviction of the robbery of both store employees. Specifically, appellant argues, the state's evidence demonstrated that only the store manager had a possessory interest in the stolen money, and the state completely failed to prove that the other employee had any possessory interest in the $198 that was actually taken from the store. *See* Phillips v. State, 99 Nev. 693, 669 P.2d 706 (1983) (conviction for robbery of customer of jewelry store reversed where customer had no possessory interest whatsoever in stolen property).

Our review of the record on appeal, however, reveals sufficient evidence to establish appellant's guilt beyond a reasonable doubt as determined by a rational trier of fact. *See* Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980). Specifically, testimony was presented to the jury indicating that, when the one employee attempted to summon help, appellant ordered her to put down the telephone while holding a knife to the store manager. Testimony also established that appellant waived the knife, ordered both women to the floor, and demanded money. Further, the one victim testified that she was an employee, that as part of her job she was counting out the daily receipts on the counter when appellant appeared, that the safe was open and that "*[w]e* told [appellant] all the money was on the counter, he could just have it." (Emphasis added.) Although appellant only took $198 and left behind the $600 in daily receipts that the employee had been counting, her testimony alone constituted substantial evidence from which the jury could reasonably infer that both women were in joint possession and control of all of the store's money. *See* NRS 200.380(1); People v. Ramos, 639 P.2d 908, 927-29 (Cal. 1982) (conviction for two separate counts of robbery was proper where property was taken from co-employees who had joint possession of property), *rev'd on other grounds,* 463 U.S. 992 (1983). Further, on the basis of the evidence before it, the jury could have reasonably inferred that appellant effected the taking or prevented or overcame the employee's resistance to the taking by means of threats of force directed to both her and the store manager. Robertson v. Sheriff, 93 Nev. 300, 302, 565 P.2d 647, 648 (1977) (for purposes of robbery statute, a thing is in the presence of a person, in respect to robbery of that person, if it "is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it"). Under these circumstances, and where, as here, substantial evidence supports the jury's finding of guilt, we will not disturb the jury's verdict. *See* Bolden v. State, 97 Nev. 71, 624 P.2d 20 (1981).

Accordingly, we affirm the judgment of the district court.